# Exhibit L

NATIONAL SECURITY COUNCIL
WASHINGTON, D.C. 20504

June 11, 2020

Charles J. Cooper
Cooper & Kirk, PLLC
1523 New Hampshire Avenue, N.W.
Washington, D.C. 20036

SENT VIA ELECTRONIC MAIL TO CCOOPER@COOPERKIRK.COM

Dear Mr. Cooper:

I was shocked and dismayed to learn from your letter of June 10, 2020, that—in brazen disregard of his obligations under his nondisclosure agreements and applicable law—your client has already provided his manuscript to a publisher, which has now printed, bound, and shipped copies to distributors across the country. Your client is well aware that the manuscript still contains classified information, because, among other things, it includes information that he himself classified and designated for declassification only after the lapse of twenty-five years. He is also well aware that the prepublication review process was still ongoing and that he never received clearance to disseminate the manuscript in its current form to *anyone* who was not authorized to handle classified information. You expressly admit that you have received no written prepublication clearance from the National Security Council. To the contrary, your client was repeatedly warned, in writing, that he was not authorized to publish the manuscript and that the process remained ongoing. Any suggestion that your client believed he had completed the prepublication process is preposterous.

By authorizing the publisher to proceed, your client has plainly violated both the classified information nondisclosure agreements that he signed and applicable law, and has betrayed his obligations to the Nation in a manner that threatens to cause significant harm to the national security of the United States. Your client is well aware that publicizing information that he learned when he served as a principal national security official would aid our Nation's adversaries. Yet he was willing to sell the Nation's secrets for a book contract. At this point, your client must do everything in his power to prevent further dissemination of the manuscript until the classified information can be removed. Your client's refusal to do so would only prove further that he is acting in his own personal interest without concern for the harm that he is causing to our Nation.

I also write to correct some of the more serious mischaracterizations and falsehoods in your letter.

***First,*** the NSC never represented that "there were no remaining issues of classified information in [your client's] manuscript" or that "no further changes to the manuscript were required."[1] To the contrary, Ms. Knight repeatedly explained that the prepublication process remains ongoing

---

[1] Letter from Charles J. Cooper to John A. Eisenberg at 1, 4 (June 10, 2020) (June 10 Letter).

and that until that process is complete and your client receives the necessary authorization at its conclusion, he may not publish or disseminate the manuscript.[2]

**Second,** the NSC did not advise your client that it had provided its "last edit" for the prepublication process on April 27, 2020.[3] In fact, even after the April 27, 2020 exchange, your client repeatedly reached out to NSC to seek "news" regarding the progress of the prepublication process. Subsequently, on April 28 and again on May 7, your client was explicitly informed that the "process remains ongoing."[4]

**Third,** you suggest that NSC needed to conclude the entire review process within 30 working days of your client's first submission.[5] As you are well aware, that claim is absurd. The relevant nondisclosure agreement provides that NSC has 30 working days to *respond* to the submission. And we did.[6] But nothing in the nondisclosure agreement requires the prepublication process to *conclude* within 30 working days or any other set period of time.[7] The length of the process depends on a host of factors, including the volume and type of information contained in the draft. In this case, your client's manuscript was roughly 500 pages, and your client knowingly included voluminous amounts of classified information in it. As a result, it has required substantial effort to assess the full extent of the classified information contained within it to ensure that it is removed.

**Fourth,** your self-serving insinuations that the NSC review process has been directed at anything other than a good faith effort to protect national security information is offensive. Your client has taken classified information, including some that he himself classified, and sold it to the highest bidder in an attempt to make a personal profit from information that he held in trust as a public servant—and has done so without regard for the harm it would do to the national security

---

[2] *See, e.g.*, Letter from Ellen J. Knight to Charles J. Cooper at 2 (Feb. 24, 2020) ("Please note the prepublication review remains in process, and *your client may not publish or further disseminate the manuscript or any of its contents until authorized.*") (Emphasis added); Email from Ellen J. Knight to Charles J. Cooper (March 27, 2020) ("I must reiterate that the prepublication review remains in process. Even after making the edits, you are not authorized to publish or further disseminate the manuscript or its contents *until expressly given clearance by me to do so.*") (Emphasis added); Email from Ellen J. Knight to Charles J. Cooper (May 7, 2020) ("I do not have any new information to provide at this time. *The process remains ongoing.* I will reach out as soon as there is an update to provide.") (Emphasis added.).
[3] June 10 Letter at 4.
[4] Email from Ellen J. Knight to John R. Bolton (April 28, 2020); Email from Ellen J. Knight to John R. Bolton (May 7, 2020).
[5] June 10 Letter at 2.
[6] *See* Letter from Ellen J. Knight to Charles J. Cooper (Jan. 23, 2020) ("Based on our preliminary review, the manuscript appears to contain significant amounts of classified information."); Letter from Ellen J. Knight to Charles J. Cooper at 1 (Feb. 7, 2020) ("In the meantime, your client has a duty not to publish or otherwise disclose the manuscript or any of its underlying information until he has addressed our concerns and received authorization to do so from our office.").
[7] *See* Sensitive Compartmented Information Nondisclosure Agreement Between John Robert Bolton and the United States § 5 (April 5, 2018) ("I further understand that the Department or Agency to which I have made a submission will . . . *make a response* to me within a reasonable time, not to exceed 30 working days from date of receipt.") (Emphasis added.).

of the United States. The NSC's sole interest in this matter is to protect the national security of the United States.

Although your client has plainly placed personal profit ahead of duty to country at this point, he still has binding obligations under the nondisclosure agreements he signed and applicable law. He is under a continuing obligation to prevent the unauthorized disclosure of classified information.[8] In addition, as your client acknowledged, "all classified information to which I have access or may obtain access by signing this Agreement is now and will remain the property of, or under the control of the United States Government unless and until otherwise determined by an authorized official or final ruling of a court of law."[9]

Accordingly, and for the reasons discussed above, your client remains under an obligation to stop the dissemination of the manuscript, which still contains classified information that belongs to the United States Government, the unauthorized disclosure of which could reasonably be expected to cause serious damage to national security. Please be advised that we have also referred this matter to the Department of Justice for appropriate action.

Please confirm immediately that your client will take all actions necessary to halt dissemination of his manuscript.

Sincerely,

*John A. Eisenberg*

John A. Eisenberg
Assistant to the President,
   Deputy Counsel to the President, and
   Legal Advisor to the National Security Council

---

[8] *See, e.g.*, Classified Information Nondisclosure Agreement Between John Robert Bolton and the United States § 8 (April 5, 2018) ("Unless and until I am released in writing by an authorized representative of the United States Government, I understand that all conditions and obligations imposed upon me by this Agreement apply during the time I am granted access to classified information, and at all times thereafter.").
[9] *Id.* § 7.