# EXHIBIT I

NATIONAL SECURITY COUNCIL
WASHINGTON, D.C. 20504

February 7, 2020

Charles J. Cooper
Cooper & Kirk
1523 New Hampshire Avenue NW
Washington, DC 20036

SENT VIA ELECTRONIC MAIL TO CCOOPER@COOPERKIRK.COM

Dear Mr. Cooper:

As you are aware, Executive Order 13526 defines "classified information" as information, the unauthorized disclosure of which could reasonably be expected to cause at the very least "identifiable or describable damage to the national security" of the United States. In order to avoid such damage, as a condition for access to classified national security information, the Executive Branch has long required its employees to submit to a critically important prepublication review process with respect to any such information in advance of publication. These nondisclosure requirements, agreed to by your client as a condition of access to classified information, supplement the legal obligations that federal law imposes upon all persons who receive access to classified information. I would be happy to provide you copies of agreements signed by your client if that would be helpful.

As I noted in my letter of January 23, 2020, our preliminary review determined that the draft contains numerous instances of classified information. For example, the draft contains classified discussions between the President and foreign heads of state, classified foreign government information, details about classified military plans and operations, and classified details about intelligence sharing and activities. As the former Assistant to the President for National Security Affairs, your client understands the sensitivity of these categories of information and the potential harm that could be expected to result from its unauthorized disclosure.

Given the volume of classified information currently contained in the draft, your client should modify and revise the manuscript to remove all classified information and resubmit it to us for review. To further the iterative review process, it would be most efficient for me to meet with your client to review each instance of classified information in detail and, as necessary, assist in the prioritization of any particular portions. I am available any day next week. In the meantime, your client has a duty not to publish or otherwise disclose the manuscript or any of its underlying information until he has addressed our concerns and received authorization to do so from our office.

As written, the manuscript is very detailed, suggesting that it was likely produced from notes written by your client during his service at the White House. When your client received his employee debriefing, he stated that he did not have any notes or other records from his government service. Any notes that remain in your client's possession regarding the accounts in

the manuscript may fall under the requirements of the Presidential Records Act and be subject to litigation holds. Please confirm whether your client has retained any notes or other records from his government service.

Of more immediate concern, as my letter of January 23, 2020, informed you, is that the manuscript contains classified information. NSC staff will be in contact with your client to provide additional guidance on how to safeguard any classified information in your client's possession and in the possession of anyone with whom your client has shared the draft manuscript or any of the manuscript's underlying information. In that regard, please also provide us, as soon as possible, with the names and contact information of anyone with whom your client has shared the manuscript or its underlying information or confirm that he has not shared it.

Please note that this letter, along with my letter of January 23, 2020, constitute NSC's initial response for the purposes of the nondisclosure agreements signed by your client.

Sincerely,

*Ellen J. Knight*

Ellen J. Knight
Senior Director for Records, Access,
    and Information Security Management

2