# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,

                Plaintiff,

  v.

JOHN R. BOLTON,

                Defendant.

**Case No. 20-cv-1580 (RCL)**

**MOTION FOR LEAVE TO FILE BRIEF OF
THE REPORTERS COMMITTEE FOR FREEDOM OF THE PRESS,
THE ASSOCIATION OF AMERICAN PUBLISHERS, INC.,
DOW JONES & COMPANY, INC., THE NEW YORK TIMES COMPANY, AND
THE WASHINGTON POST AS AMICI CURIAE IN SUPPORT OF DEFENDANT'S
OPPOSITION TO PLAINTIFF'S EMERGENCY APPLICATION FOR A TEMPORARY
<u>RESTRAINING ORDER AND MOTION FOR PRELIMINARY INJUNCTION</u>**

Proposed amici curiae the Reporters Committee for Freedom of the Press, the Association of American Publishers, Inc., Dow Jones & Company, Inc. The New York Times Company, and The Washington Post respectfully move this Court under Local Civil Rule 7(o) for leave to file the attached amicus curiae brief in support of Defendant's Opposition to the Emergency Application for a Temporary Restraining Order and Motion for Preliminary Injunction filed by Plaintiff United States of America (the "Government"). The proposed amicus brief is attached to this Motion.

1.  The Court "has broad discretion to permit . . . participat[ion] [of] amici curiae," and amicus participation is appropriate where amici have "relevant expertise and a stated concern for the issues at stake in [the] case." *Dist. of Columbia v. Potomac Elec. Power Co.*, 826 F. Supp. 2d

227, 237 (D.D.C. 2011).  An amicus brief should "'normally be allowed when . . . the amicus has unique information or perspective that can help the court beyond the help that the lawyers for the parties are able to provide.'" *Cobell v. Norton*, 246 F. Supp. 2d 59, 62 (D.D.C. 2003) (quoting *Ryan v. Commodity Futures Trading Comm'n*, 125 F.3d 1062, 1063 (7th Cir. 1997)); *see also Jin v. Ministry of State Sec.*, 557 F. Supp. 2d 131, 137 (D.D.C. 2008) (same).

2.  The Reporters Committee for Freedom of the Press (the "Reporters Committee") is an unincorporated nonprofit association of reporters and editors dedicated to defending the First Amendment and newsgathering rights of the news media.  Founded by journalists and media lawyers in 1970, when the nation's press faced an unprecedented wave of government subpoenas forcing reporters to name confidential sources, the Reporters Committee today serves as a leading voice for the legal interests of journalists and news organizations.

3.  The Association of American Publishers, Inc. ("AAP") represents the leading book, journal, and education publishers in the United States on matters of law and policy, advocating for a free and sustainable environment for publishers, authors, booksellers and readers around the world to incentivize the publication of creative expression, professional content, and learning solutions.  As essential participants in local markets and the global economy, AAP's members invest in and inspire the exchange of ideas, transforming the world we live in one word at a time.

4.  Dow Jones & Company is the world's leading provider of news and business information. Through *The Wall Street Journal*, *Barron's*, MarketWatch, Dow Jones Newswires, and its other publications, Dow Jones has produced journalism of unrivaled quality for more than 130 years and today has one of the world's largest newsgathering operations.  Dow Jones's professional information services, including the Factiva news database and Dow Jones Risk &

Compliance, ensure that businesses worldwide have the data and facts they need to make intelligent decisions. Dow Jones is a News Corp company.

5.  The New York Times Company is the publisher of *The New York Times* and operates the news website nytimes.com.

6.  The Washington Post (formally, WP Company LLC d/b/a The Washington Post) is a news organization based in Washington, D.C. It publishes The Washington Post newspaper and the website www.washingtonpost.com, and produces a variety of digital and mobile news applications.  The Post has won Pulitzer Prizes for its journalism, including the award in 2020 for explanatory reporting.

7.  The proposed amicus brief highlights for the Court the extraordinary, unconstitutional nature of the Government's emergency request for an injunction restraining not only Defendant, but also Simon & Schuster, the non-party publisher of the book *The Room Where It Happened*, and all "commercial resellers further down the distribution chain, such as booksellers[,]" from further publication and dissemination of the book.  Gov't Mot. at 29, n. 6.  As set forth in the proposed amicus brief, the Government's sweeping request for injunctive relief that would "bind" Simon & Schuster and all "commercial resellers" of the book, *id.*, amounts to a request that the Court enter an unconstitutional prior restraint on the First Amendment-protected activity of those non-parties to this litigation, and it should be denied.

8.  As organizations devoted to defending First Amendment freedoms, including the rights of journalists and media organizations to gather and publish newsworthy information, and the rights of publishers and booksellers to publish and distribute books, amici are uniquely positioned to provide the Court with arguments in support of the First Amendment rights of the publishers and booksellers that the Government seeks to enjoin who are not a party to this

litigation.  Such arguments, which are distinct from those of Defendant, will aid the Court in ruling on the Motion pending before it.

9.  Counsel for amici sought consent to submit an amicus brief in this matter from counsel for the Government and Defendant.  Defendant consents to the filing of the amicus brief. Counsel for the Government has stated that it will not oppose the filing of an amicus brief that otherwise conforms with the rules of the Court.

Dated: June 19, 2020                     Respectfully submitted,

                                         /s/ Bruce D. Brown
                                         BRUCE D. BROWN
                                         DC Bar No. 457317
                                         bbrown@rcfp.org
                                            *Counsel of Record for Amici Curiae*
                                         KATIE TOWNSEND
                                         DC Bar No. 1026115
                                         ktownsend@rcfp.org
                                         GABRIEL ROTTMAN
                                         DC Bar No. 992728
                                         grottman@rcfp.org
                                         REPORTERS COMMITTEE FOR
                                         FREEDOM OF THE PRESS
                                         1156 15th Street NW, Suite 1020
                                         Washington, DC 20005
                                         Telephone: 202.795.9300

                                         *Counsel for Amici Curiae*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,

                         Plaintiff,

  v.

JOHN R. BOLTON,

                         Defendant.

**Case No. 20-cv-1580 (RCL)**

**BRIEF OF THE REPORTERS COMMITTEE FOR FREEDOM OF THE PRESS, THE ASSOCIATION OF AMERICAN PUBLISHERS, INC., DOW JONES & COMPANY, INC., THE NEW YORK TIMES COMPANY, AND THE WASHINGTON POST AS AMICI CURIAE IN SUPPORT OF DEFENDANT'S OPPOSITION TO PLAINTIFF'S EMERGENCY APPLICATION FOR A TEMPORARY RESTRAINING ORDER AND MOTION FOR PRELIMINARY INJUNCTION**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES................................................................................................. ii

INTERESTS OF AMICI CURIAE.......................................................................................1

INTRODUCTION ................................................................................................................2

ARGUMENT........................................................................................................................5

      I.      The Government's request for an unconstitutional prior restraint as to Simon &
            Schuster and countless other non-party "commercial resellers" of Defendant's book
            must be denied...........................................................................................................5

      II.     The injunction the Government seeks would burden core First Amendment speech. ....8

      III.    The Government cannot use Rule 65 to circumvent the *Pentagon Papers* case.............9

      IV.   The relief sought here would not remedy the claimed harm and would be contrary to
            the public interest by suppressing the free flow of information to the public. ............12

CONCLUSION....................................................................................................................13

# TABLE OF AUTHORITIES

**Cases**

*Additive Controls & Measurement Sys., Inc. v. Flowdata, Inc.*, 96 F.3d 1390 (Fed. Cir. 1996) ..10

*Bank Julius Baer & Co. v. WikiLeaks*, 535 F. Supp. 2d 980 (N.D. Cal. 2008) ...........................12

*Bantam Books, Inc. v. Sullivan*, 372 U.S. 58 (1963).....................................................................5

*Bartnicki v. Vopper*, 532 U.S. 514 (2001)................................................................................7, 9

*Carroll v. Princess Anne*, 393 U.S. 175 (1968)............................................................................6

*CBS, Inc. v. Davis*, 510 U.S. 1315 (1994)....................................................................................6

*Cohen v. Cowles*, 501 U.S. 663 (1991) ........................................................................................8

*Cox Broad. Corp. v. Cohn*, 420 U.S. 469 (1975)..........................................................................7

*First Nat'l Bank of Boston v. Bellotti*, 435 U.S. 765 (1978) ......................................................13

*Kleindienst v. Mandel,* 408 U.S. 753 (1972) ..............................................................................13

*Lane v. Random House, Inc.*, 985 F. Supp. 141 (D.D.C. 1995) ...................................................9

*Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753 (1994)........................................................3

*Marcy Playground, Inc. v. Capitol Records*, 6 F. Supp. 2d 277 (S.D.N.Y. 1998) ......................12

*N.Y. Times Co. v. United States*, 403 U.S. 713 (1971).........................................................passim

*Near v. Minnesota*, 283 U.S. 697 (1931).............................................................................5, 6, 9

*Neb. Press Ass'n v. Stuart*, 427 U.S. 539 (1976)............................................................3, 5, 6, 9

*Oklahoma Publ'g Co. v. Dist. Court*, 430 U.S. 308 (1977) .........................................................7

*Paramount Pictures Corp. v. Carol Publ'g Group, Inc.*, 25 F. Supp. 2d 372 (S.D.N.Y. 1998)...10

*Smith v. Daily Mail Publ'g*, 443 U.S. 97 (1979) .........................................................................7

*Southeastern Promotions, Ltd. v. Conrad*, 420 U.S. 546 (1975)..............................................6, 8

*United States v. Quattrone*, 402 F.3d 304 (2d Cir. 2005) ..........................................................12

**Other Authorities**

11A Wright & Miller, Federal Practice and Procedure (3d ed. Apr. 2020 Update) ....................10

David Ignatius, *John Bolton's Book is Full of Startling Revelations He Should Have Told Us
   Sooner*, Wash. Post (June 17, 2020), https://perma.cc/RL2E-26C7 ........................................12

Jennifer Szalai, *In 'The Room Where It Happened,' John Bolton Dumps His Notes and Smites
   His Enemies*, N.Y. Times (June 17, 2020), https://perma.cc/A88V-JLHB ..............................12

John Bolton, *The Scandal of Trump's China Policy*, Wall Street J. (June 17, 2020),
   https://perma.cc/755H-NH7Y .................................................................................................12

**Rules**

Fed. R. Civ. P. 65...........................................................................................................................4

## INTERESTS OF AMICI CURIAE

Amici are the Reporters Committee for Freedom of the Press (the "Reporters Committee"), the Association of American Publishers ("AAP"), Dow Jones & Company, Inc. ("Dow Jones"), The New York Times Company, and The Washington Post.[1]

The Reporters Committee is an unincorporated nonprofit association of reporters and editors dedicated to defending the First Amendment and newsgathering rights of the news media. Founded by journalists and media lawyers in 1970, when the nation's press faced an unprecedented wave of government subpoenas forcing reporters to name confidential sources, the Reporters Committee today serves as a leading voice for the legal interests of journalists and news organizations. AAP represents the leading book, journal, and education publishers in the United States on matters of law and policy, advocating for a free and sustainable environment for publishers, authors, booksellers and readers around the world to incentivize the publication of creative expression, professional content, and learning solutions. Dow Jones is the world's leading provider of news and business information; it publishes *The Wall Street Journal*, *Barron's*, MarketWatch, and Dow Jones Newswires, among other publications. The New York Times Company is the publisher of *The New York Times*, and operates the news website nytimes.com. The Washington Post is a news organization based in Washington, D.C. It publishes *The Washington Post* newspaper and the website www.washingtonpost.com.

As organizations that defend First Amendment freedoms, including the rights of journalists and media organizations to gather and publish newsworthy information, and the rights

---

[1] No counsel for a party authored this brief in whole or in part, and no party or counsel for a party made a monetary contribution intended to fund the preparation or submission of this brief. No person other than amici curiae or its counsel made a monetary contribution to the preparation or submission of this brief.

of publishers and booksellers to publish and distribute books, amici have a powerful interest in the Court's rejection of the Emergency Application for a Temporary Restraining Order and Motion for Preliminary Injunction (the "Motion") filed by Plaintiff United States of America (the "Government") in the above-captioned matter against Defendant John R. Bolton ("Bolton"). Indeed, though the Reporters Committee, which frequently files amicus briefs on behalf of coalitions that include dozens of news media organizations, is joined on this brief, due to the time constraints associated with the emergency nature of the Government's Motion, by only three, those news organizations—two of which were parties in the *Pentagon Papers* case, and all three of which have published stories about or excerpts of the book at issue—reflect the strong interest of all news media organizations in the Court's resolution of the Government's Motion.

Amici write to emphasize the extraordinary, unconstitutional nature of the Government's request to enjoin Simon & Schuster, the non-party publisher of *The Room Where It Happened*, and all "commercial resellers further down the distribution chain, such as booksellers[,]" from further publication or distribution of speech on a matter of public concern.  Gov't Mot. at 29, n.6. For the reasons set forth herein, amici urge the Court to deny the Government's Motion.

## INTRODUCTION

Forty-nine years ago, amici *The New York Times* and *The Washington Post* were before the federal courts in another case where the Government sought to prevent the disclosure of speech about government affairs in the name of national security.  The precedent the Supreme Court of the United States established on the last day of June 1971 in the *Pentagon Papers* case affirmed the constitutionally protected role of the press as a check against government authority and the vehicle by which the public holds elected officials accountable.  *See N.Y. Times Co. v. United States*, 403 U.S. 713 (1971) (per curiam) ("*Pentagon Papers*") (rejecting prior restraints

on publication of material regarding the history of U.S. military involvement in Vietnam by *The New York Times* and *The Washington Post* despite government assertions that disclosure would imperil national security).

The Government could not have sued Simon & Schuster in this case directly, and served it with injunction papers, without running straight into the legacy of the *Pentagon Papers* case and the considerable Supreme Court precedent from both before and after that decision that make clear the First Amendment protects the publication and dissemination of speech from prior restraint.  Indeed, it has long been recognized that prior restraints on publication pose the "greatest threat to First Amendment values."  *See Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753, 797 (1994) (Scalia, J., concurring in part and dissenting in part).  They are "the most serious and the least tolerable infringement on First Amendment rights[.]"  *Neb. Press Ass'n v. Stuart*, 427 U.S. 539, 559 (1976) ("*Nebraska Press*").  And, for this reason, courts have without fail held efforts to restrain First Amendment-protected speech on matters of public concern to the most exacting standard, even when the gravest of interests are alleged to be at stake.  *Cf. Pentagon Papers*, 403 U.S. at 730 (Stewart and White, JJ., concurring) ("But I cannot say that disclosure of any of [the Pentagon Papers] will surely result in direct, immediate, and irreparable damage to our Nation or its people.  That being so, there can under the First Amendment be only one judicial resolution of the issues before us.").

In a transparent attempt to avoid a direct confrontation with the "heavy presumption against [the] constitutional validity" of a prior restraint, *Pentagon Papers*, 403 U.S. at 714 (internal quotations and citations omitted)—a presumption which it cannot overcome—the Government tries an indirect approach aimed at obtaining a sweeping, worldwide injunction against the further publication and dissemination of *The Room Where It Happened*.  It nominally

pursues emergency injunctive relief solely against Defendant predicated on contractual and other obligations he allegedly breached, but it argues that such an injunction should "bind" not only Defendant, but also the non-party publisher of the book, Simon & Schuster, as well as any and all "commercial resellers" of it, under Rule 65(d)(2) of the Federal Rules of Civil Procedure ("Rule 65").  Gov't Mot. at 29, n.6.  The Government's sleight of hand, however, does not make its extraordinary effort to enjoin First Amendment-protected speech constitutional.

Setting aside the question of whether the Court may properly and in accordance with the First Amendment enjoin Defendant, such an injunction cannot properly extend to Simon & Schuster, nor any bookseller or distributor.  Simon & Schuster acquired the manuscript of *The Room Where It Happened* from Defendant, and it has already printed, bound, and shipped that book to distributors and retailers nationwide.  *See* Declaration of Jonathan Karp, ECF No. 9-17 ("Karp Decl."), at ¶¶ 17–20.  An injunction may not reach back in time to enjoin action taken prior to when it was issued, and it certainly cannot be used to restrain Simon & Schuster from exercising its own First Amendment right to further publish and disseminate a book that it acquired from Defendant.  That the Government would go a step further, arguing in a footnote at the end of its Motion—without citation to any legal authority (because there is none to muster)— that this prior restraint should also extend to bookstores and all other "commercial resellers" of the book only underscores the flatly unconstitutional nature of the relief the Government seeks.  Gov't Mot. at 29, n.6.  The sweeping, extraordinary prior restraint sought by the Government here places this matter on all fours with the *Pentagon Papers* case, and the same "heavy presumption" against its constitutionality must apply.  *Pentagon Papers*, 403 U.S. at 714.

The emergency injunctive relief sought by the Government, if awarded by this Court, would transform the Government's already vast classification authority into an impermissible

system of prior restraint whereby, upon the unilateral assertion of the executive branch that material is classified, a court could stop a book publisher from publishing, a distributor from distributing, a seller from selling, and a reader from reading, political or expressive work critical of government agencies or officials. Such a "system of prior restraints on expression comes to this Court bearing a heavy presumption against its constitutional validity." *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 70 (1963); *see also Near v. Minnesota*, 283 U.S. 697, 717 (1931) ("[Freedom of the press] was especially cherished for the immunity it afforded from previous restraint of the publication of censure of public officers and charges of official misconduct."). The Government's claim that somehow Rule 65 authorizes such a system, and permits emergency attempts by the Government to halt the distribution of speech about matters of public concern by countless non-parties in the "distribution chain" is wholly without merit.

For the reasons herein, amici urge the Court to deny the Government's Motion.

## ARGUMENT

I. **The Government's request for an unconstitutional prior restraint as to Simon & Schuster and countless other non-party "commercial resellers" of Defendant's book must be denied.**

It has been said that "it is the chief purpose of the guaranty [of the First Amendment] to prevent previous restraints upon publication." *Near*, 283 U.S. at 713; *see also Nebraska Press*, 427 U.S. at 559, 562 (explaining that prior restraints are "the most serious and the least tolerable infringement on First Amendment rights" and "one of the most extraordinary remedies known to our jurisprudence"). This fundamental, "deep-seated American hostility to prior restraints[,]" *id.* at 589 (Brennan, J., concurring), has given rise to a "heavy presumption against [their] constitutional validity[,]" *Pentagon Papers*, 403 U.S. at 714—one that can be overcome "only in 'exceptional cases.'" *CBS, Inc. v. Davis*, 510 U.S. 1315, 1317 (1994) ("*Davis*") (Blackmun, J.,

in chambers (quoting *Near*, 283 U.S. at 716)).  Indeed, "[t]he presumption against prior restraints is heavier—and the degree of protection broader—than that against limits on expression imposed by criminal penalties."  *Southeastern Promotions, Ltd. v. Conrad*, 420 U.S. 546, 558-59 (1975); *see also Nebraska Press*, 427 U.S. at 589 (Brennan, J., concurring in the judgment) ("The First Amendment thus accords greater protection against prior restraints than it does against subsequent punishment for a particular speech." (citing *Carroll v. Princess Anne*, 393 U.S. 175, 180-81 (1968))).

Beginning in 1931, in *Near*, the Supreme Court has without fail rejected requests to impose prior restraints on members of the media.  283 U.S. at 713.  The Court has struck down prior restraints in cases where the justifications claimed included the Sixth Amendment rights of criminal defendants, *Nebraska Press*, 427 U.S. at 570, and confidential or proprietary business information, *Davis*, 510 U.S. at 1318.  And, almost 50 years ago, the Court rejected a prior restraint preventing publication of the "Pentagon Papers" by amici *The New York Times* and *The Washington Post* despite the government's claims that an injunction preventing publication was necessary to protect national security.  *See Pentagon Papers*, 403 U.S. at 714.  As Justice Brennan wrote in his concurring opinion, "only governmental allegation *and proof* that publication must inevitably, directly, and immediately cause the occurrence of an event kindred to imperiling the safety of a transport already at sea can support even the issuance of an interim restraining order."  *Id*. at 726-27 (Brennan, J., concurring) (emphasis added).  Further, Justice Brennan made clear that injunctions to maintain the status quo are impermissible.  *Id.* at 727 ("Unless and until the Government has clearly made out its case, the First Amendment commands that no injunction may issue.").

The Supreme Court has also repeatedly recognized that publishers and members of the media are free to publish information that the government may have sought to keep secret.  For example, in *Cox Broad. Corp. v. Cohn*, 420 U.S. 469 (1975), the Court explained that the government may not sanction a news organization that accurately published a rape victim's name obtained from judicial records open to public inspection.  Likewise, in *Oklahoma Publ'g Co. v. Dist. Court*, 430 U.S. 308 (1977) (per curiam), the Court reversed an injunction preventing reporting on the name or likeness of a juvenile criminal defendant, after his name and picture were publicly revealed in connection with the prosecution of a crime, despite a state law that required juvenile proceedings to be held in private.  And even when there is an unauthorized release of the information, the presumptive bar on prior restraints applies.  That is the lesson of the *Pentagon Papers* case, in which the Court rejected prior restraints that the government asserted were needed to prevent the release of military secrets.  *Pentagon Papers*, 403 U.S. at 714.  Indeed, the Supreme Court has made clear that, even if a source has acted unlawfully in disclosing information, a publisher who was not a part of the source's wrongful conduct has a First Amendment right to publish the information free not only of prior restraints but even post-publication penalties.  *See Bartnicki v. Vopper*, 532 U.S. 514, 527-28 (2001); *Smith v. Daily Mail Publ'g*, 443 U.S. 97, 105-06 (1979).

Here, there can be no doubt that the emergency injunctive relief sought by the Government to restrain further publication and dissemination of *The Room Where It Happened* is a prior restraint subject to the rigorous scrutiny applied by the Supreme Court in the *Pentagon Papers* case.  The book is core political speech about matters of intense public interest and import.  And, almost as an afterthought, the Government includes in its Motion against Defendant a request for a sweeping injunction that would—on the bare assertion of the executive

7

branch that information in the book is properly classified—bar non-party publisher Simon & Schuster and every bookseller in the world from further publishing or disseminating that speech. Under longstanding First Amendment jurisprudence, such a prior restraint on information about government affairs is subject to a "heavy presumption against [its] constitutional validity[,]" *see Pentagon Papers*, 403 U.S. at 714—a presumption that the Government cannot overcome here.

## II.    The injunction the Government seeks would burden core First Amendment speech.

The Government attempts to muddy this clear, black letter law by suggesting that "the Free Speech Clause does not entitle book sellers to special exemptions from the application of general, speech-neutral laws such as Rule 65."  Gov't Mot. at 28.  This statement echoes the principle articulated in *Cohen v. Cowles*, which held that generally applicable laws with "incidental" effects on the ability to gather news do not violate the First Amendment.  501 U.S. 663, 669 (1991).  But, that principle has no place here, where the Government seeks a worldwide injunction on the sale of a book—an extreme form of prior restraint, which carries a heavy presumption of unconstitutionality.  *Southeastern Promotions*, 420 U.S. at 558.  To be clear, publishers, booksellers, and the news media—like the public at large—are shielded by the Constitution when laws of general applicability burden First Amendment rights, as the Government's requested injunctive relief would.  Further, books are not like other products. They are, by definition, expressive, and the *content* of a book (or a magazine, or a newspaper, or an evening newscast) is entitled to full First Amendment protections against prior restraint, particularly where, as here, it involves newsworthy issues of intense public interest.  As this Court observed in dismissing a libel claim based on an advertisement for a book on public affairs, "the challenged advertisement is not about laundry detergent; it cannot be divorced from

the book *Case Closed*; and the book is protected speech." *Lane v. Random House, Inc.*, 985 F. Supp. 141, 152 (D.D.C. 1995) (Lamberth, J.).

The Government cites *Bartnicki*, 532 U.S. 514, which only undercuts its claim that "speech-neutral" laws can be applied to burden speech. There, the Supreme Court held that a concededly content-neutral wiretapping law criminalizing the disclosure of illegally wiretapped communications, even where the discloser acquired the intercepts legally, was the "regulation of pure speech," and therefore unconstitutional were it applied to punish a discloser who innocently received the communications. *Id.* at 526-27. Similarly, although the law in *Near* included a provision that applied to a "malicious, scandalous and defamatory newspaper, magazine or other periodical," the statute was grounded in the generally applicable tort of nuisance, and provided for the abatement of the nuisance (shutting down the newspaper) through injunction. *Near*, 283 U.S. at 701-02. And, in *Nebraska Press*, the Court expressly recognized "special protection" for "[t]ruthful reports of public judicial proceedings" from subsequent punishment, which the Court held should apply with "particular force" in the context of that case: an injunction restraining coverage of criminal proceedings. 427 U.S. at 559. Indeed, the damage can be "particularly great when the prior restraint falls upon the communication of news and commentary on current events." *Id.* Those cases, along with *Pentagon Papers*, would control had the Government directly named Simon & Schuster and any commercial reseller of the book a party to this case, and they control now.

## III.   The Government cannot use Rule 65 to circumvent the *Pentagon Papers* case.

A rule of court cannot overcome the Constitution; it must be interpreted in light of the Constitution. The Government cannot escape the constitutionally mandated result under the

*Pentagon Papers* case by declining to sue a publisher directly and instead seeking to enjoin one, as it has done here with non-party Simon & Schuster, indirectly under Rule 65.

And even assuming Rule 65 could overcome established First Amendment protections for the publication and dissemination of speech on matters of public interest—which it cannot— the injunction sought by the Government could not reach Simon & Schuster. Injunctions against non-parties are only upheld in certain specific circumstances and ought never to be upheld in the context of a prior restraint on First Amendment-protected speech. *See* 11A Wright & Miller, Federal Practice and Procedure § 2956 (3d ed. Apr. 2020 Update) ("Injunctions purporting to bind the entire world or all those with notice of its provisions now are held to be invalid."); *Additive Controls & Measurement Sys., Inc. v. Flowdata, Inc.*, 96 F.3d 1390, 1394 (Fed. Cir. 1996) ("[C]ourts of equity have long observed the general rule that a court may not enter an injunction against a person who has not been made a party to the case before it."). Here, Defendant delivered his manuscript to Simon & Schuster well in advance of this Motion. Karp Decl., ¶ 17. Simon & Schuster formally accepted that manuscript; it then printed, bound, sold, and shipped the book to distributors and retailers. *Id.* ¶¶ 17-19. Defendant has no power to compel Simon & Schuster to stop further publication or dissemination of the book. *Id.* ¶ 17. And Simon & Schuster has no power to compel distributors or retailers to return copies of the books they obtained and now own. *Id.* ¶ 20. Even if this case were somehow outside the ambit of *Pentagon Papers*, which it is not, an injunction cannot "reach back in time . . . ." *Paramount Pictures Corp. v. Carol Publ'g Group, Inc.*, 25 F. Supp. 2d 372, 375 (S.D.N.Y. 1998).

In support of this contention, the Government cites two inapposite intellectual property cases. In contrast to a prior restraint on First Amendment-protected speech, injunctions are permissible in intellectual property infringement cases to bind non-party entities in active concert

10

or participation with infringers.  The same First Amendment concerns do not weigh on such cases.  For example, in copyright infringement matters, First Amendment concerns are addressed through the fair use doctrine and the idea/expression dichotomy, *Eldred v. Ashcroft*, 537 U.S. 186, 219 (2003), and therefore do not restrict the availability of non-party injunctions. Moreover, the Government's cited cases are inapposite because they both involve injunctions on "producers" of "products" in private disputes where the Government is not a party and neither the "producers" nor the "products" involved are inherently entitled to First Amendment protection.  That is not the case here, where the injunction targets a publisher, bookstores, and books, which all are inherently entitled to First Amendment protection.

The Government's untethered invocation of Rule 65 does not stop there.  The Government argues that this Court, sitting in equity, may not only enjoin a non-party publisher, but also every bookseller in the world that has acquired the book and wishes to sell it.  *See Pentagon Papers*, 403 U.S. at 725 (Brennan, J., concurring) ("So far as I can determine, never before has the United States sought to enjoin a newspaper from publishing information *in its possession*.") (emphasis added).  The Government states in a footnote, without citation to any supporting authority, that "[c]ommercial resellers further down the distribution chain, such as booksellers, likewise would be subject to the injunction under Rule 65(d) once they have actual notice of it, as Simon & Schuster does."  Gov't Mot. at 29, n.6.  But just as Rule 65 provides no basis to enjoin the constitutionally protected speech of non-party Simon & Schuster, it cannot be used to impose a sweeping prior restraint on countless other non-party "commercial resellers" and booksellers.

Five decades ago, the *Pentagon Papers* case rejected the remedy the Government seeks here and its effort to reargue its brief through Rule 65 must fail.

**IV.    The relief sought here would not remedy the claimed harm and would be contrary to the public interest by suppressing the free flow of information to the public.**

The relief sought by the Government would be ineffectual in remedying any claimed harm from the release of the book.  The book has shipped, and numerous news organizations, including the three news media amici, have already started reporting on its contents.  See Karp Decl., ¶¶ 16–22; *see also, e.g.*, Jennifer Szalai, *In 'The Room Where It Happened,' John Bolton Dumps His Notes and Smites His Enemies*, N.Y. Times (June 17, 2020), https://perma.cc/A88V-JLHB (book review); David Ignatius, *John Bolton's Book is Full of Startling Revelations He Should Have Told Us Sooner*, Wash. Post (June 17, 2020), https://perma.cc/RL2E-26C7 (book review); John Bolton, *The Scandal of Trump's China Policy*, Wall Street J. (June 17, 2020), https://perma.cc/755H-NH7Y (exclusive excerpt).

Courts routinely deny injunctions in cases where the injunction would not remedy the harm because the allegedly harmful material is already in the public domain.  *See, e.g.*, *United States v. Quattrone*, 402 F.3d 304, 312 (2d Cir. 2005) (reversing order enjoining news media from reporting juror names announced in open court); *Bank Julius Baer & Co. v. WikiLeaks*, 535 F. Supp. 2d 980, 985 (N.D. Cal. 2008) (declining to issue injunction where "there is evidence the cat is out of the bag"); *Marcy Playground, Inc. v. Capitol Records*, 6 F. Supp. 2d 277, 282 (S.D.N.Y. 1998) (denying injunction where it "would be very much like locking the barn door after the horse is gone").  Further, the Government is not seeking to enjoin news organizations from reporting on the book, nor could it under *Pentagon Papers*.  And, as noted directly above, amicus *The Wall Street Journal* has published a lengthy excerpt.  The "cat" is clearly "out of the bag," which strongly weighs against issuance of the sweeping injunctive relief sought by the Government here.

12

Moreover, not only will the Government not be aided in remedying its supposed injury by issuance of the prior restraint it seeks, but such injunctive relief would severely impair the public's right to know.  For this reason, too, the public interest weighs against issuance of the injunction.  *See, e.g.*, *First Nat'l Bank of Boston v. Bellotti*, 435 U.S. 765, 783 (1978) ("[T]he First Amendment goes beyond protection of the press and the self-expression of individuals to prohibit government from limiting the stock of information from which members of the public may draw."); *Kleindienst v. Mandel,* 408 U.S. 753, 762 (1972) ("In a variety of contexts, this Court has referred to a First Amendment right to 'receive information and ideas[.]'").

## CONCLUSION

For the foregoing reasons, amici urge the Court to deny the Government's Emergency Motion for a Temporary Restraining Order and Motion for Preliminary Injunction.

Dated: June 19, 2020                    Respectfully submitted,

                                        /s/ Bruce D. Brown
                                        BRUCE D. BROWN
                                        D.C. Bar No. 457317
                                        bbrown@rcfp.org
                                            *Counsel of Record for Amici Curiae*
                                        KATIE TOWNSEND
                                        ktownsend@rcfp.org
                                        DC Bar No. 1026115
                                        GABRIEL ROTTMAN
                                        grottman@rcfp.org
                                        DC Bar No. 992728
                                        REPORTERS COMMITTEE FOR
                                        FREEDOM OF THE PRESS
                                        1156 15th Street NW, Ste. 1020
                                        Washington, DC 20005
                                        Telephone: 202.795.9300

                                        *Counsel for Amici Curiae*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,

                          Plaintiff,

   v.                                            **Case No. 20-cv-1580 (RCL)**

JOHN R. BOLTON,

                          Defendant.

## <u>CERTIFICATE RULE LCvR 26.1</u>

I, the undersigned, counsel of record for amici curiae the Reporters Committee for

Freedom of the Press, the Association of American Publishers, Inc., Dow Jones & Company,

Inc., The New York Times Company, and The Washington Post certify that to the best of my

knowledge and belief:

1.  The Reporters Committee for Freedom of the Press is an unincorporated association of

reporters and editors with no parent corporation and no stock.

2.  The Association of American Publishers, Inc. ("AAP") is a nonprofit organization that

has no parent and issues no stock.

3.  Dow Jones & Company, Inc. ("Dow Jones") is an indirect subsidiary of News

Corporation, a publicly held company.  Ruby Newco, LLC, an indirect subsidiary of News

Corporation and a non-publicly held company, is the direct parent of Dow Jones.  News

Preferred Holdings, Inc., a subsidiary of News Corporation, is the direct parent of Ruby Newco,

LLC.  No publicly traded corporation currently owns ten percent or more of the stock of Dow Jones.

  4.  The New York Times Company is a publicly traded company and has no affiliates or subsidiaries that are publicly owned. No publicly held company owns 10% or more of its stock.

  5.  WP Company LLC d/b/a The Washington Post is a wholly-owned subsidiary of Nash Holdings LLC, a holding company owned by Jeffrey P. Bezos. WP Company LLC and Nash Holdings LLC are both privately held companies with no securities in the hands of the public.

  These representations are made in order that judges of this court may determine the need for recusal.

Dated: June 19, 2020      Respectfully submitted,

          /s/ Bruce D. Brown
          BRUCE D. BROWN
          DC Bar No. 457317
          bbrown@rcfp.org
           *Counsel of Record for Amici Curiae*
          REPORTERS COMMITTEE FOR
          FREEDOM OF THE PRESS
          1156 15th Street NW, Suite 1020
          Washington, DC 20005
          Telephone: 202.795.9300

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,

                            Plaintiff,

   v.                                                    **Case No. 20-cv-1580 (RCL)**

JOHN R. BOLTON,

                            Defendant.

### [PROPOSED] ORDER

Upon consideration of the Motion for Leave to File Brief of the Reporters Committee for Freedom of the Press, the Association of American Publishers, Inc., Dow Jones & Company, Inc., The New York Times Company, and The Washington Post as Amici Curiae Supporting Defendant's Opposition to Plaintiff's Emergency Application for a Temporary Restraining Order and Motion for Preliminary Injunction, it is hereby

ORDERED that the Motion is granted, and further

ORDERED that the brief of the Reporters Committee for Freedom of the Press, the Association of American Publishers, Inc., Dow Jones & Company, Inc., The New York Times Company, and The Washington Post as Amici Curiae Supporting Defendant's Opposition to Plaintiff's Emergency Application for a Temporary Restraining Order and Motion for Preliminary Injunction is hereby deemed filed in the above-captioned action.

Dated: _____

_____
Hon. Royce C. Lamberth
United States District Court Judge