CLERK
US DISTRICT & BANKRUPTCY
COURTS

2020 JUN 19 AM 9: 54

RECEIVED

UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br>plaintiff,<br><br>v.<br><br>**JOHN BOLTON**<br>defendant. | Cause No. 1:20-CV- 01580 RCL<br><br>**INTERESTED PARTY'S<br>MOTION FOR LEAVE<br>TO INTERVENE (FRCP 24)** |

Comes now the Interested Party, Arthur West, pursuant to Rule 24 of the Federal Rules of Civil Procedure, and respectfully moves the Court for the following relief:

**1.** That he be granted leave to intervene in the instant case.

**2.** That the Court declare the plaintiff's review process, as applied in a partisan and unfair manner to effect an overbroad prior restraint, is unconstitutional, and dismiss this case, or, in the alternate, that any injunction that might be entered in this case be narrowly tailored to address specificaly identified line and page numbers of the defendant's book and that judicial review of these sections be expedited to take place within 14 days.

### I. BASIS

This Motion is based upon the files and records of this case, FRCP 24 (a) and (b) the 1st Amendment to the Constitution of the United States of America, and the appended Memorandum in Support.

### II. GROUNDS

The grounds for this Motion include the following, as set forth more fully in the appended Memorandum:

1:20-CV- 01580 RCL
INTERESTED PARTY'S
FRCP 24 MOTION
TO INTERVENE



RECEIVED Mail Room JUN 2 2 2020 Angela D. Caesar, Clerk of Court U.S. District Court, District of Columbia

ARTHUR WEST
120 State Ave. NE # 1497
Olympia, WA 98501

**1.** West has a contract right and a 1ˢᵗ Amendment right to receive (See *Board of Education v. Pico, 457 U.S. 853, (1982)* the information at issue in this case that differs from defendant Bolton's right to distribute the information[1] as well as plaintiff United States' interest in suppression of this political speech.

**2.** This case seeks to impose a grossly overbroad and classic prior restraint of unspecified duration upon dissemination of information which, according to plaintiff's Exhibit K, has already been the subject of repeated, protracted, exhaustive and undeniably reasonably adequate review to exclude any possible threat to national security.

**3.** The present plaintiff and defendant in this case have interests which differ in scope and kind from those of West, and they are therefore unable to adequately represent these divergent interests[2] in the right to receive printed information containing core political speech.

Done June 19, 2020.

s/ *Arthur West*
ARTHUR WEST

---

[1] Justice Brennan expressly addressed the difference in the position of senders versus receivers when he observed that the question posed would be more troubling "if the addressees predicated their claim for relief upon the First Amendment rights of the senders." *Lamont v. Postmaster General, 381 U.S. 301 at 307 (1965),* (Brennan, J., concurring)

[2] The dissemination of ideas can accomplish nothing if otherwise willing addressees are not free to receive and consider them. It would be a barren marketplace of ideas that had only sellers and no buyers. *Lamont v. Postmaster General, at 308,* (Brennan, J., concurring)

1:20-CV- 01580 RCL
INTERESTED PARTY'S
FRCP 24 MOTION
TO INTERVENE

ARTHUR WEST
120 State Ave. NE # 1497
Olympia, WA 98501

UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br>plaintiff,<br><br>v.<br><br>**JOHN BOLTON,**<br>defendant. | Cause No. 1:20-CV- 01580 RCL<br><br>**INTERESTED PARTY'S MEMORANDUM IN SUPPORT OF MOTION FOR LEAVE TO INTERVENE (FRCP 24)** |

## I. INTRODUCTION

This case involves an application for a grossly overbroad prior restraint upon printed political speech that has been filed and set far too swiftly to allow for adequate representation of the many competing interests that the relief sought in this action would impact.

> FRCP 24 (a) and (b) provide:
>
> (a) Intervention of Right. On timely motion, the court must permit anyone to intervene who:
> (1) is given an unconditional right to intervene by a federal statute; or
> (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.
> (b) Permissive Intervention.
> (1) *In General.* On timely motion, the court may permit anyone to intervene who:
> (A) is given a conditional right to intervene by a federal statute; or
> (B) has a claim or defense that shares with the main action a common question of law or fact.

Intervener West has a substantial interest relating to the property or transaction at issue in this case, and a claim that shares common questions of law or fact. The precipitous disposion of this action in his absence may impair West's ability to protect this interest.

1:20-CV- 01580 RCL
INTERESTED PARTY'S
FRCP 24 MOTION
TO INTERVENE

ARTHUR WEST
120 State Ave. NE # 1497
Olympia, WA 98501

Neither of the two existing parties share or can adequately represent West's First Amendment or contractual interests in receiving the information at issue in this case from third parties not before the Court. The requirements of FRCP 24 are present in this case, and West's Motion to Intervene should be granted.

## II. WEST HAS A DISCRETE FIRST AMENDMENT INTEREST IN RECEIVING CORE POLITICAL SPEECH THAT IS NOT ADEQUATELY REPRESENTED

Over 75 years ago, in *Martin v. City of Struthers, 319 U.S. 141 (1943)*, Justice Hugo Black first recognized, in regard to the First Amendment, that: "This freedom embraces the right to distribute literature, and necessarily protectsthe right to receive it."

Twenty-six years later, the Court first used the exact phrase "right to receive information and ideas" in *Stanley v. Georgia*, 394 U.S. 557 (1969). Justice Thurgood Marshall explained that "[i]t is now well established that the Constitution protects the right to receive information and ideas."

The Court later used the principle to justify free-speech protection for commercial speech in *Virginia State Pharmacy Board v. Virginia Citizens Consumer Council, 425 U.S. 748 (1976)*. In that decision, the Court emphasized the right of the public to receive information...

A few years later, Justice William Brennan offered the most extensive treatment of the principle in a library book censorship case, *Board of Education v. Pico, 457 U.S. 853 (1982)*. He explained that the right to receive information and ideas is an important concept in free-speech and free-press cases for two reasons.

> First, the right to receive flows naturally from the right to send or disseminate expression. Second, the right to receive information and ideas triggers the recipients' First Amendment rights.

West's right to receive information is at issue in this case because he has pre-ordered and paid for the book at issue in this case through Amazon, a corporation owned in large part by Jeff Bezos. Significantly Neither Amazon, Bezos, or Simon and Schuster, the publishers of the book have been joined as parties. Neither have any of the many other citizens of this Republic who have paid for and ordered this printed material. Yet the United States has expressed the intent to

1:20-CV- 01580 RCL
INTERESTED PARTY'S
FRCP 24 MOTION
TO INTERVENE

ARTHUR WEST
120 State Ave. NE # 1497
Olympia, WA 98501

bind these non-parties to an ex parte injunction under FRCP 65. Such a result would adversely impact the interests not only og West, but of countless other unnamed proper parties.

West is an advocate for open government and disclosure of contested records. He has over a dozen published cases on the Public Records Act and the Open Public Meetings Act in the Appellate Courts of the State of Washington.

Along with a consortium of media groups, West successfully opposed and argued against a prior restraint on dissemination of information sought in *Does v. King County*, 192 Wash. App. 10 (2015). More recently, West prevailed in a January 20, 2020 Published Decision in *West v. City of Tacoma* obtaining disclosure of details of Stingray technology despite a Statement of Intertest of the United States opposing such disclosure.

The United States was not adequately representing West's interest in seeking to suppress disclosure in *West v. City of Tacoma*, and it is similarly not adequately representing his interests in attempting to suppress disclosure of the entirety of Mr. Bolton's Book in the instant case, especially when West seeks to receive this political speech.

Similarly, Mr. Bolton has already delivered his manuscript to publishers, who have published it and distributed it widely for sale by third parties not joined in this action to consumers such as West. Any interest Bolton has in West's receipt of his book is minimal and attenuated at best.

Under such circumstances it is very unlikely that defendant Bolton shares or is inclined to pay his private counsel to adequately represent West's interests, which differ substantially from his own. At this point, it is uncertain as to whether defendant will even assert the requisite 7 enumerated 12(b)6 defenses, which West hereby formally asserts as defenses to the relief sought herein.

Neither of the present parties share or are disposed to adequately represent West's interests, which include a speedy resolution of the issues in this case to allow for the most expeditious dissemination of the political speech in question.

1:20-CV- 01580 RCL
INTERESTED PARTY'S
FRCP 24 MOTION
TO INTERVENE

ARTHUR WEST
120 State Ave. NE # 1497
Olympia, WA 98501

### III. AS APPLIED TO INVIDIOUSLY PROSCRIBE POLITICAL PUBLICATION, THE UNITED STATES' REVIEW PROCESS IS A PARTISAN, CONTENT BASED, AND UNCONSTITUTIONAL PROCEDURAL MORASS

As demonstrated by the United States' Exhibit K, the correspondence from defendant Bolton's counsel, the book in question has been through an extensive and time consuming vetting and censoring process. What remains is core speech on matters of public concern. The value of this type of speech must be resolved through free and open debate in the marketplace of ideas—not through partisan and politically motivated litigation seeking to impose prior restraints on statements that, even after an overly zealous and thorough review are speciously alleged to be a threat to national security.

Even more clearly, a court should not order a "prior restraint" on this type of speech, much less prevent distribution of the printed word to those such as West who have a contractual and First Amendment right to receive this political speech concerning a public controversy from parties such as Amazon or Simon and Shuster, who, significantly, are also not before the Court.

Accordingly, the Complaint should be dismissed because it violates the First Amendment, fails to state a claim upon which relief can be granted, and, most egregiously, fails to name known necessary parties whose due process rights will be trampled by adjudication of these important First Amendment issues in their absence.

From West's perspective, this suit should be dismissed immediately, because "[s]erious of the manifest due process issues that would result from ex parte adjudication of rights of non-parties, as well as problems regarding the exercise of free speech and free press guaranteed by the First Amendment that will result if such unwarranted lawsuits are allowed to proceed to trial. See *Tait v. KING Broad. Co.*, 1 Wn. App. 250, 255, 460 P.2d 307 (1969).

Indeed, "[t]he chilling effect of the pendency of such litigation can itself be sufficient to curtail the exercise of these freedoms." *Id.* It is "essential" that this type of frivolous suit be dismissed as early as possible because "the stake here, if harassment succeeds, is free debate." *Rye v. Seattle Times Co.*, 37 Wn. App. 45, 53, 678 P.2d 1282 (1984).

"Unless persons, including newspapers, desiring to exercise their First Amendment rights are assured freedom from the harassment of lawsuits, they will tend to become self-censors." *Id.*

1:20-CV- 01580 RCL
INTERESTED PARTY'S
FRCP 24 MOTION
TO INTERVENE

ARTHUR WEST
120 State Ave. NE # 1497
Olympia, WA 98501

(quoting *Washington Post Co. v. Keogh*, 365 F.2d 965, 968 (D.C. Cir. 1966)). "And to this extent debate on public issues and the conduct of public officials will become less uninhibited, less robust, and less wide-open, for self-censorship affecting the whole public is 'hardly less virulent for being privately administered.'" *Id*.

These are interests that are not being adequately represented by the existing parties.

## IV. THE UNITED STATES SEEKS AN OVERBROAD, UNLAWFUL PRIOR RESTRAINT FOR THE PURPOSE OF PRETEXTUAL SUPPRESSION OF CORE POLITICAL SPEECH CRITICAL OF THE EXECUTIVE

A critical consideration in this case is that the plaintiff seeks, with lightly veiled political animus, to employ national security as a pretext to enjoin disclosure of core political speech to prevent its dissemination to the public, in a classic form of prior restraint.

Of all the protections accorded under the First Amendment, the prohibition against prior restraint is perhaps the most secure. for there is a heavy presumption that any prior restraint on publication of information or ideas is constitutionally invalid. This doctrine has been firmly established for 60 years, since the U.S. Supreme Court decided *Near v. Minnesota, 283 U.S. 697 (1931)*.

Chief Justice Warren Burger, in delivering the opinion in *Nebraska Press Assn. v. Stuart, 427 U.S. 539 (1976)*, reviewed prior decisions of the Court and concluded that: The thread running through all these cases is that prior restraints on speech and publication are the most serious and least tolerable infringement on First Amendment rights.

Prior restraints restricting disclosure of information have often been successfully challenged. The issue of prior restraint has been present in many widely publicized cases. The government unsuccessfully sought to enjoin publication of the "Pentagon Papers" in *New York Times, Co. v. United States*, 403 U.S. 713 (1971).

CBS successfully challenged a prior restraint barring litigants in a group of civil suits arising out of the antiwar demonstrations at Kent State University from discussing the cases with the news media. *CBS, Inc. v. Young*, 522 F.2d 234 (6th Cir. 1975). In another CBS case, a temporary restraining order preventing CBS from broadcasting the government's undercover

1:20-CV- 01580 RCL
INTERESTED PARTY'S
FRCP 24 MOTION
TO INTERVENE

ARTHUR WEST
120 State Ave. NE # 1497
Olympia, WA 98501

videotape of John DeLorean was struck down in CBS, Inc. v U.S. District Court, 729 F.2d 1174 (9th Cir. 1984). Former Panama Leader Manuel Noriega unsuccessfully attempted to restrain CNN from broadcasting recorded conversations between him and his defense counsel in U.S. v. Noriega, 917 F.2d 1543 (11th Cir. 1990).

As Blackstone himself noted, The liberty of the press is indeed essential to the nature of a free state; but this consists in laying no previous restraints upon publications, and not in freedom from censure for criminal matter when published.

Professor Emerson, in his classic work[3], has more recently recognized...
The form and dynamics of such systems tend strongly towards over- control-towards an excess of order and an insufficiency of liberty.

Perhaps the most significant feature of systems of prior restraint is that they contain within themselves forces which drive irresistibly toward unintelligent, overzealous, and usually absurd administration. As Milton long ago observed,

No adequate study seems to have been made of the psychology of licensers, censors, security officials, and their kind, but common experience is sufficient to show that their attitudes, drives, emotions, and impulses all tend to carry them to excesses....it occurs in all areas where officials are driven by fear or other emotion to suppress free communication."

The system of prior restraints in the english licensing act of 1662 is a typical example. As Emerson describes, it was abolished after 30 years because the system in operation had become generally unwieldy, extreme, and even ridiculous.

Lord Macaulay reports that in the House of Commons:

They pointed out concisely, clearly and forcibly, and sometimes with a grave irony which is not unbecoming, the absurdities and iniquities of the statute...

The absurdities and iniquities of allowing any official to impose prior restraints upon what a citizen can publish remain as convincing today as they were Three and a half Centuries ago.

West should be granted leave to intervene and the prior restraint sought in this case should be summarilly denied or at the least narrowly tailored to small and well defined sections

---

3 Emerson, Thomas, "*The Doctrine of Prior Restraint,*" Law and Contemporary Problems 20 (1955): 648-71

1:20-CV- 01580 RCL
INTERESTED PARTY'S
FRCP 24 MOTION
TO INTERVENE

ARTHUR WEST
120 State Ave. NE # 1497
Olympia, WA 98501

out of the entire book which can be reviewed in camera in an expeditious manner so as not to interfere with the timely disclosure of the bulk of its political speech.

For all these reasons, West respectfully requests that the Court grant him leave to intervene in this action and that, if the Court seriously intends to entertain the relief sought by the United States in the absence of other known interested parties, that it set an expedited schedule for the resolution of the issues in this case.

Respectfully submitted this day of June 19, 2020

s/ *Arthur West*
ARTHUR WEST
120 State Ave NE #1497
Olympia, WA. 98501
(360) 593-4588

## DECLARATION OF SERVICE

I, Arthur West, certifies as follows:

On June 19, 2020, I served the Motion and Memorandum to Intervene on counsel for the plaintiff by emailing a copy to the email addresses of record appearing on the Complaint.

I also express mailed a copy to the defendant John Bolton, at the address appearing on the Complaint.

I certify the foregoing to be correct and true under penalty of perjury of the laws of the State of Washington.

Done this 19[h] day of June, 2020, in Olympia, Washington.

s/ *Arthur West*
ARTHUR WEST

1:20-CV- 01580 RCL
INTERESTED PARTY'S
FRCP 24 MOTION
TO INTERVENE

ARTHUR WEST
120 State Ave. NE # 1497
Olympia, WA 98501