**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:20-cv-01580-RCL |
| | ) | |
| JOHN R. BOLTON, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DEFER
CONSIDERATION OF PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT**

## TABLE OF CONTENTS

INTRODUCTION ...................................................................................................... 1

STANDARD OF REVIEW ......................................................................................... 2

ARGUMENT ............................................................................................................. 3

I.    The Actual Presence of Classified Information Is Irrelevant to Plaintiff's
      Motion for Summary Judgment........................................................................ 4

        A.    Form 4414 Mandated Prepublication Review And Does Not Depend
              on the Actual Presence of Classified Information or SCI. ................... 5

        B.    The SF 312 Mandated Prepublication Review And Does Not Depend
              on the Actual Presence of Classified Information............................ 12

              1.    SF 312 Imposes Objective Criteria For Pre-Publication
                    Review ..................................................................... 13

              2.    SF 312 Requires Written Confirmation that Information Is
                    Unclassified ......................................................... 17

II.   The Government's Alleged Bad Faith Does Not Constitute An Affirmative
      Defense In This Context.................................................................................. 18

CONCLUSION......................................................................................................... 21

## TABLE OF AUTHORITIES

**Cases**

*ASB Allegiance Real Estate Fund v. Scion Breckenridge Managing Member, LLC,*
   50 A.3d 434 (Del. Ch. 2012), *rev'd on other grounds,* 68 A.3d 665 (Del. 2013) ........ 9

*Byrd v. U.S. Envtl. Prot. Agency,*
   174 F.3d 239 (D.C. Cir. 1999) ................................................................................... 3

*Carpenter v. Fed. Nat'l Mortg. Ass'n,*
   174 F.3d 231 (D.C. Cir. 1999) ................................................................................... 3

*Convertino v. U.S. Dep't of Justice,*
   684 F.3d 93 (D.C. Cir. 2012) ..................................................................................... 3

*DeHart v. Moore,*
   424 F. Supp. 55 (S.D. Fla. 1976) .............................................................................. 9

*Eldridge v. Gordon Bros. Grp., LLC,*
   863 F.3d 66 (1st Cir. 2017) ....................................................................................... 9

*FERC v. City Power Marketing, LLC,*
   235 F. Supp. 3d 152 (D.D.C. 2017) ........................................................................... 3

*Gustafson v. Alloyd Co.,*
   513 U.S. 561 (1995) ................................................................................................. 17

*Ikossi v. Dep't of Navy,*
   516 F.3d 1037 (D.C. Cir. 2008) ................................................................................. 2

*Info. Tech. & Applications Corp. v. United States,*
   316 F.3d 1312 (Fed. Cir. 2003) ............................................................................... 21

*Russello v. United States,*
   464 U.S. 16 (1983) ................................................................................................... 17

*Snepp v. United States,*
   444 U.S. 507 (1980) ......................................................................................... *passim*

*Stillman v. CIA,*
   319 F.3d 546 (D.C. Cir. 2003) ................................................................................. 10

*Strang v. U.S. Arms Control & Disarmament Agency,*
   864 F.2d 859 (D.C. Cir. 1989) ................................................................................... 2

*Trudel v. SunTrust Bank,*
   288 F. Supp. 3d 239 (D.D.C. 2018)..............................................................................3

*United States ex rel. Folliard v. Gov't Acquisitions, Inc.,*
   764 F.3d 19 (D.C. Cir. 2014)......................................................................................3

*United States v. Marchetti,*
   466 F.2d 1309 (4th Cir. 1972) ..................................................................................19

# INTRODUCTION

The United States entrusted Defendant, the former Assistant to the President for National Security Affairs ("APNSA" or "National Security Advisor"), with this Nation's most sensitive secrets.  In accepting that information, Defendant also accepted the responsibility of keeping that information secure.  In particular, he agreed to submit relevant materials that *could* contain classified information for prepublication review.  He agreed not to release any information until that review resulted in written confirmation that no classified information was at issue.  And if he disagreed with the pace or result of that review, his remedy was to file a lawsuit challenging the Government's determination as is customary in prepublication disputes, not to resort to self-help and release the information unilaterally.

Defendant has not complied with his obligations: while he did submit his manuscript for prepublication review, it is not reasonably disputed that he "opted out of the review process before its conclusion" and "unilateral[ly] fast-track[ed]" the decision to publish his manuscript.  Mem. Order, ECF No. 27, at 6.  Such actions violate his explicit agreements, and these facts and findings—none of which is in genuine dispute—justify summary judgment in the Government's favor.

Defendant, seeking to avoid the consequences of his actions, now attempts to forestall summary judgment by filing a Rule 56(d) motion to defer judgment pending the completion of discovery.  He seeks discovery on whether information in his manuscript was accurately identified as classified, and discovery into the Government's internal processes in an attempt to show that the Government acted

in "bad faith" during the prepublication processes.  But neither of these topics justifies postponing the Government's summary-judgment motion, because neither of those topics is legally relevant.  Under Defendant's agreements, neither the classification status of the information at issue nor his own subjective assessment of that information matters toward his prepublication duty—his obligation attaches regardless of whether the information is, in fact, classified.  The memoir triggered his contractual and fiduciary obligations to complete the prepublication process, even if his (ultimately incorrect) view that the manuscript never contained classified information were borne out.  Nor is the Government's purported "bad faith" relevant as an affirmative defense.  Had Defendant believed that the Government was acting inappropriately, he had a remedy: to file suit challenging that conduct *without* releasing his manuscript to the world.  But he opted to engage in self-help instead— exactly the type of behavior the prepublication requirement is designed to prevent. Accordingly, Defendant's Rule 56(d) motion should be denied, and the Government's motion for summary judgment should be granted.[1]

## STANDARD OF REVIEW

To delay entry of summary judgment under Civil Rule 56(d), Defendant bears the burden of demonstrating "with 'sufficient particularity . . . why discovery [is] necessary.'"  *Ikossi v. Dep't of Navy*, 516 F.3d 1037, 1045 (D.C. Cir. 2008) (quoting *Strang v. U.S. Arms Control & Disarmament Agency*, 864 F.2d 859, 861 (D.C. Cir.

---

[1] Defendant did not file an opposition to the Government's summary judgment motion in conjunction with his Rule 56(d) motion, and he has not contested any of the undisputed record facts the Government set forth as grounds for its motion.

1989)).  Rule 56(d) requires the non-moving party to submit a declaration that: (1) "outline[s] the particular facts he intends to discover and describe why those facts are necessary to the litigation"; (2) "explain[s] 'why [she] could not produce [the facts] in opposition to the motion [for summary judgment];'" and (3) "show[s] the information is in fact discoverable." *Convertino v. U.S. Dep't of Justice*, 684 F.3d 93, 99-100 (D.C. Cir. 2012) (first quoting *Byrd v. U.S. Envtl. Prot. Agency*, 174 F.3d 239, 248 (D.C. Cir. 1999), then quoting *Carpenter v. Fed. Nat'l Mortg. Ass'n*, 174 F.3d 231, 237 (D.C. Cir. 1999)).  The D.C. Circuit has cautioned, moreover, that "[i]t is . . . incorrect to conclude" that Rule 56(d) requests should be granted "more often than not;" rather, each request must be resolved "based on [the] application of the *Convertino* criteria to the specific facts and circumstances presented in the request." *United States ex rel. Folliard v. Gov't Acquisitions, Inc.*, 764 F.3d 19, 26-27 (D.C. Cir. 2014).

Critically, Rule 56(d)'s requirement that the party outline why facts are necessary to the litigation requires that such facts be legally relevant to the case, *i.e.*, that they could be dispositive with respect to a material issue. *See, e.g.*, *Trudel v. SunTrust Bank*, 288 F. Supp. 3d 239, 256 (D.D.C. 2018) (denying Rule 56(d) on the basis that discovery would not "yield facts that would change the outcome"); *FERC v. City Power Marketing, LLC*, 235 F. Supp. 3d 152, 160 (D.D.C. 2017) (denying Rule 56(d) motion on the basis that party sought "irrelevant" information).

## ARGUMENT

Defendant argues that he is entitled to postpone resolution of the Government's summary-judgment motion for two reasons: First, because he "intends

to establish, through discovery, that his book *does not contain* any properly classified information, SCI, or description of activities relating to or derived from SCI." Def.'s Rule 56(d) Mot., ECF No. 49-1, at 9. And second, because he "intends to establish, through discovery, that the Government's actions in undertaking and conducting Mr. Ellis's 'additional review' of the manuscript were in bad faith." *Id.* at 11. Neither of these purposes is relevant to the Government's motion. The presence of classified information is legally irrelevant to the prepublication-review requirements Defendant violated. *See Snepp v. United States*, 444 U.S. 507, 511 (1980) ("Whether Snepp violated his trust does not depend upon whether his book actually contained classified information."). Nor are Defendant's allegations of bad faith legally relevant. Had Defendant believed that the Government was acting in bad faith, his remedy was to bring a lawsuit alleging a contractual violation *before* disclosing any information subject to prepublication review, not to release that information, irreparably injure the United States, and then attempt to evade liability for the consequences of his own actions. Instead, when Defendant did not immediately receive the written authorization he knew he needed to complete his prepublication obligations, he breached those obligations by opting to proceed with publication. Accordingly, since Defendant's purported discovery is irrelevant, his Rule 56(d) motion ought to be denied.

## I.   The Actual Presence of Classified Information Is Irrelevant to Plaintiff's Motion for Summary Judgment.

The premise of Defendant's motion is that his book does not contain classified information, or if it does, that such information was not classified at the time he

authorized his manuscript's publication—and even if it was, he lacked the scienter allegedly necessary to breach the prepublication-review requirements. *See, e.g.*, ECF No. 49-2 ¶ 10.   None of these premises is relevant under the prepublication requirements established under Form 4414 and the SF 312.   *See* Security Agreements, First Decl. of Matthias Mitman, Exh. A, ECF No. 3-6.   As the Government explained in its motion for summary judgment, Defendant was entrusted with unsurpassed access to classified information, including SCI information, as the Assistant to the President for National Security Affairs, and he was required to have "access to the highest levels of national security and intelligence information" at all times to carry out these duties.   Second Decl. of Matthias Mitman ¶ 21, ECF No. 44-2.   His 592-page book purports to take readers into "The Room Where It Happened" by describing in detail his experiences in that role.   Such a book is obviously captured by Form 4414's requirement that any work containing a "description of activities that produce or relate to SCI" must go through prepublication review.   And it is also captured by the SF 312's requirement that an author obtain written permission to publish if the classified status of information is uncertain.   Accordingly, these arguments provide no sound basis for delaying the entry of summary judgment in this case.

### A. Form 4414 Mandated Prepublication Review And Does Not Depend on the Actual Presence of Classified Information or SCI.

Defendant's breach of his obligations under Form 4414 does not depend on the presence of any classified information in his manuscript.   As an explicit condition of his service as National Security Advisor, Defendant "agree[d] to submit to security

review by the Department or Agency . . . any writing or other preparation in any form, including a work of fiction, that contains or purports to contain any SCI or description of activities that produce or relate to SCI or that I have reason to believe are derived from SCI, that I contemplate disclosing to any person not authorized to have access to SCI or that I have prepared for public disclosure." Form 4414 ¶ 4. He agreed that he was prohibited from disclosing such materials "until [he has] received written authorization from the Department or Agency that last authorized [his] access to SCI that such disclosure is required." *Id.* Defendant's manuscript indisputably contains a "description of activities that produce or relate to SCI," *id.*, as his duties as National Security Advisor necessarily included activities that produce or related to SCI. *See* Gov't Opp'n & Cross-Mot. for Summ. J., ECF No. 42 at 18-19. Critically, Defendant does not dispute or seek discovery on *that* point. *See generally* ECF No. 49-2. And he indisputably did not receive written authorization to publish his manuscript. Mem. Order, ECF No. 27, at 3. That is enough to resolve this case. Nonetheless, Defendant advances a hodgepodge of objections to this straightforward construction of Form 4414. None constitutes a fair reading of his contractual obligations sufficient to justify discovery.

*First*, he says that the agreement applies only to SCI that "was classified as such *at the time he authorized its publication*." Def.'s Reply ISO Mot. to Dismiss, ("Def.'s Reply") at 3, ECF No. 48; *see also* Def.'s Rule 56(d) Mot. at 10. This is a non sequitur. The contractual prepublication requirement covers more than just material classified as SCI; it also covers material that contains "descriptions of activities that

produce or relate to SCI or that [the author] has reason to believe are derived from SCI," Form 4414 ¶ 4, even if that material is not itself SCI.  In other words, the book itself need not contain SCI for it to fall within the scope of Form 4414's prepublication review.   This makes sense for a number of reasons.   The whole point of the prepublication-review process is to guard against the unauthorized disclosure of information that would damage national security, a purpose that would be frustrated if the Government did not have the opportunity to review for, identify, and make a determination as to the classification status of information and whether the information is authorized for release.  It is therefore sensible for the Government to set wider criteria for prepublication review to ensure an opportunity to review materials that could contain SCI.

*Second*, Defendant creates and tears down a strawman, claiming that the argument that prepublication review is required "if the information is *ever* classified as SCI at *any* point in time, including *after its* disclosure . . . makes no sense . . . [because] the very notion of prepublication review of material that, as here, has already been published is oxymoronic." Def.'s Reply at 4.  But the prepublication-review process is designed precisely to avoid a situation in which an author releases classified information that the Government would have identified as such if given an opportunity to review it.  The former National Security Advisor's refusal to complete that process does not give him *carte blanche* to publish his manuscript.

To the extent that Defendant is claiming that the Government cannot identify information that is SCI during the prepublication review, that argument is belied by

the very text of paragraph 4 of Form 4414.  If the Government were limited only to material identified as SCI (as Defendant claims) it would be pointless for the contract to have provisions that allow the Government to review the material more broadly to find material *related to or derived from* SCI (particularly where such material, if not otherwise classified, can be published without restriction).  The reason that the prepublication obligation covers material related to or derived from SCI is to provide the Government the opportunity to identify information that could contain SCI or be otherwise classified and therefore can harm national security if disclosed, and to take appropriate action.  Defendant's thinly sketched due process and First Amendment claims, *see* Def.'s Reply at 5-6, can thus be rejected because they are based on a premise—retroactive, post-approval classification—not at issue here.  Rather, as the Supreme Court held in *Snepp*, there is no constitutional problem with the Government asserting its rights in an employment agreement intended to prevent the dissemination of classified information.

*Third*, Defendant claims that the prepublication-review procedure set out in paragraph 4 "at most requires prepublication review of a writing that an employee has some *reason to believe* contains information related to SCI."  Def.'s Reply at 7.  This, he claims, justifies a scienter requirement that he says warrants postponing summary judgment.  Def.'s Mem. at 9.  But the plain text of paragraph 4 belies that conclusion: it requires prepublication review of material "[(1)] that contains or purports to contain any SCI or [(2)] description of activities that produce or relate to SCI or [(3)] that I have reason to believe are derived from SCI."  Form 4414 ¶ 4.  Of

these, the first two categories contain no scienter requirement at all—by their terms, they apply so long as the material falls into that category, regardless of the author's subjective beliefs.  That the contract put a knowledge requirement in one of three categories, but did not impose that requirement on the other two categories, implies that there is no such knowledge requirement for those categories.  Even so, the "reason to believe" limitation of category three is best read as an objective standard, not a subjective one.  And it is not objectively reasonable for Defendant to maintain that he had no "reason to believe" his book about his experiences as National Security Advisor contained not a shred of information derived from SCI.

Nor does the second criterion ("description of activities that produce or relate to SCI") "render[] the third trigger *utterly superfluous*," as Defendant erroneously claims.  Def.'s Reply at 8.  There may be some overlap between the categories, but they are nonetheless distinct.  And in any event, some redundancy is not fatal, particularly given the critical importance of protecting classified information.

Indeed, throughout Defendant's argument is the implicit claim that strict liability in the context of classified information is absurd.  *See, e.g.*, Def.'s Reply at 9; Def.'s Mem. at 9.  But this is a *contract* case, and "'[p]roving a breach of contract claim does not' (repeat, does *not*) 'depend on the breaching party's mental state.'" *Eldridge v. Gordon Bros. Grp., LLC*, 863 F.3d 66, 88 (1st Cir. 2017) (quoting *ASB Allegiance Real Estate Fund v. Scion Breckenridge Managing Member, LLC*, 50 A.3d 434, 442, 444 (Del. Ch. 2012), *rev'd on other grounds*, 68 A.3d 665 (Del. 2013)); *DeHart v. Moore*, 424 F. Supp. 55, 57 (S.D. Fla. 1976) ("In general, to establish breach of contract one

need not establish any particular mental state.").  Nor is Defendant correct that the Government's reading "would thus effectively require a former employee to submit to prepublication review *every* writing touching on his government service."  Def.'s Reply at 9.[2]  As Defendant himself acknowledges, "related to" does not reasonably encompass all activity, but requires a connection to SCI.  *Id.* at 16.  If the information satisfies that requirement—and here, it does—the prepublication requirement attaches.  Regardless, Defendant does not advance a reading of this term that would exclude the entirety of his 592-page tome about his recent experiences in one of the most senior national security roles in the whole of Government.

*Fourth*, Defendant complains that the First Amendment prohibits any restraint on publishing materials "that he *has no 'reason to believe'* contain SCI (or information related to or derived from SCI)[.]"  *Id.* at 10.  But he has no First Amendment right to publish classified information; his belief that his manuscript does not contain such information is irrelevant.  *See Stillman v. CIA*, 319 F.3d 546, 548 (D.C. Cir. 2003) ("If the Government classified the information properly, then [plaintiff] simply has no first amendment right to publish it").  And the real possibility an author may lack such knowledge underscores a central purpose of prepublication review—namely, to ensure would-be authors do not unwittingly publish classified information.  While Defendant may have the First Amendment right to publish

---

[2] Even if Defendant's broad view is correct, that would not defeat application of the contract to his book.  When former employees with access to classified information write about their government service, it is entirely reasonable for the government to protect that information through a prepublication process.

*unclassified information*, this does not justify ignoring the prepublication requirements he expressly agreed to as a condition of his service. The proper fix, if he believed the Government was improperly withholding authorization to published unclassified information, was judicial review, not self-help.

*Fifth*, Defendant returns to his assertion that this is a contract of adhesion, and that his claim should be treated the same as any routine commercial contract (with ambiguity construed against the drafter). Def.'s Reply at 10. Notwithstanding that the factual premises of the "adhesion contract" theory do not hold true here, this Yale Law School-trained Defendant was not forced to assume the role of National Security Advisor. Indeed, it is risible for Defendant to voluntarily assume the role of National Security Advisor, including the access and information granted to him in that role, and then argue that he is somehow a victim of the Government's terms of accepting that role. Even so, he offers no authority for the proposition that such principles apply in the context of agreements governing classified information, and, indeed, *Snepp* specifically noted that such principles "ha[v]e no bearing on a contract" made to protect intelligence sources and methods. *Snepp*, 444 U.S. at 513 n. 9. And he offers no cogent argument as to why Form 4414 is ambiguous as applied to "The Room Where It Happened."

It bears repeating: the purpose of prepublication review is to ensure that the *Government*, not an author, ultimately is responsible for making determinations about the classified status of information. If an author disagrees with that determination, or believes that a determination is being withheld unjustly, the author

may pursue a judicial remedy.  He may not, however, simply publish the material without consequence—and Defendant's proposed contract interpretation is inconsistent with that fundamental objective.

### B. The SF 312 Mandated Prepublication Review And Does Not Depend on the Actual Presence of Classified Information.

Defendant made a promise with the United States in exchange for access to classified information: that he would not disclose such information without advance permission from the Government, and if there was doubt, that he could not release such information absent confirmation.  *See* SF 312 ¶ 3.  As explained in the Government's opening brief, prepublication review works in two different ways, depending on the status of the information.  First, if the information is classified, then (1) the individual must seek permission to disclose that information, and (2) cannot distribute that information absent authorization (although with that authorization by the Government, the information becomes declassified and thus proper for release).[3]  Second, if the individual has doubt as to the status of that information, the individual must receive confirmation from the Government that the

---

[3] *See* SF 312 ¶ 3 ("I hereby agree that I will never divulge classified information to anyone unless: (a) I have officially verified that the recipient has been properly authorized by the United States Government to receive it; or (b) I have been given prior written notice of authorization from the United States Government Department or Agency (hereinafter Department or Agency) responsible for the classification of information or last granting me a security clearance that such disclosure is permitted.").

information is unclassified before it can be disclosed.[4]  And in both cases, such confirmation must be in writing.

Defendant continues to argue with two aspects of this requirement.  First, he says that he is only obligated to submit to prepublication review if he *knows* or *believes* that the information is classified, even though he concedes that the obligation to seek confirmation that information is unclassified applies even if there is *objective* doubt.  *See* Def.'s Reply at 20-21.  But this approach cannot be squared with the unambiguous text of the SF 312, which imposes no knowledge requirement, and would simply make no sense given that the express point of prepublication review is that the *Government*, not an individual, decides the classification status of information owned by the Government.  Second, he agrees that if there is objective doubt about the status of information, he must seek confirmation—but he says that confirmation need not be in writing.  Again, this approach is not dictated by the text of the agreement, and is entirely inconsistent with its purpose.

### 1.    SF 312 Imposes Objective Criteria For Pre-Publication Review

The prepublication requirement applies to information that is classified, regardless of an individual's subjective understanding of the status of the information.  The plain text of the SF 312 is explicit on this point: "I hereby agree that I will never divulge classified information to anyone," absent express

---

[4] *See* SF 312 ¶ 3 ("I understand that if I am uncertain about the classification status of the information, I am required to confirm from an authorized official that the information is unclassified before I may disclose it, except to a person as provided in (a) or (b), above.").

authorization from the Government.  SF 312 ¶ 3.  The agreement does not mention "information I know to be classified" or "information I believe to be classified"; it covers information that *is* classified, even though Defendant wishes to read in a term that suggests the subjective belief of the author drives the obligation.  *See* Def.'s Reply at 19 (review applies "only where the employee wishes to disclose information that *he knows* is classified.").  The objective criteria makes sense, given the public trust that is placed in each individual given access to classified information.  Indeed, Defendant (correctly) concedes that the language in the subsequent sentence, which discusses situations where he is "uncertain about the classification status of information," cannot be read to free an individual to unilaterally disclose information no matter how *unreasonable* his uncertainty may be.  *See id.* at 20-21.  Yet Defendant's effort to read a knowledge requirement into the phrase "I will never divulge classified information to anyone" absent pre-authorization would appear to authorize precisely that, or at least (in his view) to free the author from the written authorization requirement.

Defendant says that his reading—which requires review only if the author *knows* that information is classified—would read the "uncertainty" sentence out of the SF 312.  *See* Def.'s Reply at 17-19.  He argues that "if the provision that an employee 'never divulge classified information' applied to information that is classified *even though the employee does not know it*, there would be no purpose at all in separately *requiring the employee*, when he is 'uncertain about the classification status of information' to 'confirm from an authorized official that the information is

unclassified.'" *Id.* at 18 (quoting SF 312 ¶ 3).  But there is no redundancy.  Recall that there is a *primary* prohibition on releasing classified information absent authorization, *under any circumstances*, and a subsidiary requirement that if there is doubt about the status of that information, the party must confirm the status of that information.  This is a broader review than simply classified information so as to ensure that classified information is not inadvertently disclosed.  The uncertainty provision provides a mechanism for an individual to ensure that he does not inadvertently violate the primary prohibition.

Nor do the two reviews collapse into one another.  The requirement to seek review if information is classified can lead to two answers: (1) a prohibition on release, because the information is classified, or (2) a decision to declassify the information, permitting the individual to release it.  The requirement to seek review if the status of information is *uncertain* can lead to *three* answers: (1) confirmation that the information is unclassified; (2) authorization to release because the Government has determined declassification is appropriate; or (3) a prohibition on releasing classified information.  There is thus no redundancy—while the potential outcomes in the event of objective doubt are broader than objective classification, that is simply because that is a broader universe of information under such circumstances.

Defendant's reading to the contrary is nonsensical.  He argues that he need not seek review if he is subjectively certain that information is unclassified, even though he agrees he must seek review if there is objective doubt (even if there is no subjective doubt).  That makes no sense, and would seem to imply a loophole where if a person

15

subjectively believes that information is unclassified, even though it is objectively classified, there need be no review at all.  That proposition simply cannot be squared with the text of the SF 312.  And it certainly cannot be squared with the requirement that it is the Government, not the author, who decides what information is classified.  *See, e.g.*, *Snepp*, 444 U.S. at 512 ("When a former [employee] relies on his own judgment about what information is detrimental, he may reveal information that the [Government]—with its broader understanding of what may expose classified information and confidential sources—could have identified as harmful.").

Tracking his interpretation of Form 4414, Defendant complains that the Government's interpretation would impose "strict liability" in the event of the disclosure of classified information.  Def.'s Reply at 20.  His complaint is no more availing here.  As discussed above, strict liability is an ordinary feature of contracts, which do not rely on the mental state of the breaching party.  *See supra* at 10-11.  Even under strict liability, such liability is also reasonable in context, where the prepublication-review process gives authors a certain path by which to avoid any risk of liability at all.  And, in any event, strict liability in the form of a constructive trust of their profits for authors who refuse to complete prepublication review is not absurd at all, much less so absurd as to require Defendant's convoluted, subjective interpretation of the SF 312.  If there were any doubt about the status of the information in his manuscript, he was required to raise those doubts with the Government to ensure that he is not disclosing classified information, and file suit if he is dissatisfied with the process.

### 2.   SF 312 Requires Written Confirmation that Information Is Unclassified

Defendant argues that even if he was "required to confirm from an authorized official that the information is unclassified[,]" SF 312 ¶ 3, this confirmation may be verbal, not in writing.  Def.'s Reply at 21-24.  He is wrong about that.  But even if he is right, he *still* has not received verbal confirmation on behalf of the Government that the information is unclassified.

As discussed in the Government's opening brief, taken in a vacuum, it is at most ambiguous whether the phrase "required to confirm from an authorized official" in SF 312 refers to written or verbal confirmation.  Defendant trots out the canon that a court should "refrain from concluding here that . . . differing language in . . . two subsections has the same meaning in each," to argue that written confirmation is only necessary when the individual seeks to "divulge classified information."  SF 312 ¶ 3; *see also Russello v. United States*, 464 U.S. 16, 23 (1983).  But that canon does not apply here.  Rather, to resolve any possible ambiguity, the *noscitur a sociis* canon, whereby the meaning of an ambiguous word should be determined by considering the words which it is associated in context, should be applied.  *See Gustafson v. Alloyd Co.*, 513 U.S. 561, 575 (1995) (applying this canon).

That context points to written disclosure.  The paragraph affirms that authorization must be in writing, which suggests that other, ambiguous references to authorization should also be understood to require a writing.  Indeed, the "required to confirm" sentence incorporates by reference the review provision in the preceding sentence, which explicitly requires written approval.

In any event, there was *no* authorization, whether in writing or orally. Defendant acknowledges that he published his manuscript, even though he was expressly told that "[t]he process [of review] remains ongoing."   ECF No. 1-13. Defendant now claims that this communication was referring merely to the process of sending a "pro-forma letter" that would "record[]" the judgment of the Government, Def.'s Reply at 24, but this is a wishful gloss over the undisputed fact that no such judgment was given.   *See, e.g.*, Decl. of John R. Bolton ¶17, ECF No. 9-1.   Even on Defendant's accounting, it was clear that the conversation with Ms. Knight did not give him permission to proceed with publication.   Indeed, Defendant's efforts to claim this exchange constitutes "confirmation" illustrates why the SF 312 imposes a written confirmation requirement—so there can be no doubts when classified information is at stake.

***

Because the presence or absence of classified information is not legally relevant to Defendant's obligation to complete the prepublication-review process (which he indisputably did not), he is not entitled to discovery regarding the status of classified information in order to postpone the Government's summary-judgment motion.

## II.   The Government's Alleged Bad Faith Does Not Constitute An Affirmative Defense In This Context.

Defendant also asserts that the Government acted in bad faith and that this provides an affirmative defense to his unauthorized release of classified information. *See* Def.'s Mem. at 11-15.   But if Defendant believed the process was defective, he had

a remedy—he could have raised these allegations and sought judicial review of the

process *before publishing the book*. He did not. As this Court has already concluded:

> Bolton disputes that his book contains any such classified information and emphasizes his months-long compliance with the prepublication review process. He bristles at the mixed messages sent by prepublication review personnel and questions the motives of intelligence officers. Bolton could have sued the government and sought relief in court. Instead, he opted out of the review process before its conclusion. Unilateral fast-tracking carried the benefit of publicity and sales, and the cost of substantial risk exposure. This was Bolton's bet: If he is right and the book does not contain classified information, he keeps the upside mentioned above; but if he is wrong, he stands to lose his profits from the book deal, exposes himself to criminal liability, and imperils national security. Bolton was wrong.

Mem. Order at 6. Indeed, this has been a bedrock principle of prepublication review

for nearly fifty years. A party is "entitled to judicial review of any action by the

[Government] disapproving publication of the material." *United States v. Marchetti*,

466 F.2d 1309, 1317 (4th Cir. 1972). But "[b]ecause of the sensitivity of the area and

confidentiality of the relationship in which the information was obtained …, we find

no reason to impose the burden of obtaining judicial review upon the [Government].

It ought to be on [the employee]." *Id.* In other words, allegations of bad faith might

have been a basis to sue the Government for undue delay or a wrongful denial of

approval; but they are not a basis for an affirmative defense after he violated his

contractual obligations.

This conclusion follows directly from *Snepp*. There, the Supreme Court noted

that "[i]f the agent publishes unreviewed material in violation of his fiduciary and

contractual obligation, the [constructive] trust remedy simply requires him to

disgorge the benefits of his faithlessness.  Since the remedy is *swift and sure*, it is tailored to deter those who would place sensitive information at risk."  *Snepp*, 444 U.S. at 516 (emphasis added).  A remedy is not "swift and sure" if it depends on an amorphous concept of "bad faith."  It is similarly incompatible with the purposes of prepublication review, which is the recognition that "[w]hen a former agent relies on his own judgment about what information is detrimental, he may reveal information that the CIA—with its broader understanding of what may expose classified information and confidential sources—could have identified as harmful."  *Id.* at 512. Allowing a bad faith affirmative defense where authors publish their works without authorization (as opposed to a claim in a suit challenging a prepublication decision *before* release) would enable authors—who are frequently no longer in Government— to make a unilateral declassification decision.  After all, regardless of whether an individual could establish the facts to support such an affirmative defense, the classified information would still be released to the world upon publication.

Indeed, Defendant's "bad faith" argument collapses into an argument that the information contained in his manuscript is not classified.  *See* Def.'s Mem. at 14-15. But even if this were the case, it still would not be legally relevant.  The opportunity to challenge that classification decision was at the time of the decision, before publication, in a lawsuit that provided judicial review of the process without the irreparable harm of release.  Defendant had such an opportunity, and ignored it when he flouted the requirements of the prepublication process.

Ultimately, to the extent that Defendant wished to raise a bad faith defense (a defense that, even in the commercial context, requires that "the proof must be almost irrefragable," *Info. Tech. & Applications Corp. v. United States*, 316 F.3d 1312, 1323 n. 2 (Fed. Cir. 2003)), the opportunity to do so was in the context of a lawsuit challenging the Government's conduct.  It was not in defense to the constructive trust action that the Supreme Court has prescribed for those individuals who breach their contractual obligations and put the Government's most sensitive secrets at risk. Accordingly, because this is not a valid affirmative defense, discovery into such conduct is not necessary.

## CONCLUSION

For the aforementioned reasons, this Court should deny Defendant's Rule 56(d) motion and grant summary judgment to the United States.

Dated:  September 3, 2020                    Respectfully submitted,

ETHAN P. DAVIS
Acting Assistant Attorney General

MICHAEL SHERWIN
Acting United States Attorney

DAVID M. MORRELL
Deputy Assistant Attorney General

ALEXANDER K. HAAS
Director
Federal Programs Branch

   */s/ Daniel F. Van Horn*
Daniel F. Van Horn (D.C. Bar. No. 924092)

Assistant United States Attorney
555 Fourth Street N.W., Room E4226,
Washington, D.C. 20530
Tel: 202-252-2506
Email: daniel.vanhorn@usdoj.gov

*/s/ Michael J. Gerardi*

Michael J. Gerardi (D.C. Bar No.
1017949)
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs
Branch
1100 L Street NW, Room 11514
Washington, D.C. 20005
Tel: (202) 616-0680
Fax: (202) 616-8460
E-mail: michael.j.gerardi@usdoj.gov

*Counsel for Plaintiff*